UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JUDY POPULIS and JACQUELINE BROUSSARD, | * * * | CIVIL ACTION NO. _____ |
| Plaintiffs | * * | SECTION _____ |
| VS. | * * | JUDGE _____ |
| CAPITAL AREA TRANSIT SYSTEM | * * | MAGISTRATE JUDGE _____ |
| Defendant | * * * | COMPLAINT-CLASS ACTION |

**COMPLAINT**

I. INTRODUCTION

1.	Plaintiffs Judy Populis and Jacqueline Broussard are individuals who are both deaf and blind. They have been certified as eligible paratransit riders by Capital Area Transit System (CATS), and they rely on CATS for transportation. They bring this action on behalf of themselves and other CATS-certified paratransit users against CATS for its failure to provide paratransit services that comply with the requirements of Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act of 1973 ("§504"). Plaintiffs seek injunctive relief requiring CATS to increase and improve its paratransit service in order to fully meet the demand of ADA-eligible paratransit riders who depend on CATS to meet their transportation needs.

II. JURISDICTION AND VENUE

2.	This court has jurisdiction over this action pursuant to 28 USC §1331 because it arises under Title II of the ADA and §504, both of which are federal statutes. This court further has jurisdiction of Plaintiff's ADA claims pursuant to 28 U.S.C. §1343. Declaratory relief is authorized pursuant to 28 U.S.C. §§2201 and 2202.

3.	Venue is appropriate in this district pursuant to 28 U.S.C. §1391(b)(2) since all of the events that give rise to this Complaint occurred in this district.

### III.  PARTIES

4.	Plaintiff Judy Populis is a resident of Baton Rouge, Louisiana.  She has been certified as ADA-eligible for paratransit services in Baton Rouge since August 1998.

5.	Plaintiff Judy Populis has disabilities that affect major life activities, including caring for herself, seeing, hearing, verbalizing, and navigating unfamiliar areas.  She is a "qualified individual with a disability" as those terms are used and defined in the ADA, 42 U.S.C. §§12102(2) and 12131(2), and 28 C.F.R. §35.104; and in §504, 29 U.S.C. §794.

6.	Plaintiff Jacqueline Broussard is a resident of Baton Rouge, Louisiana.  She has been certified as ADA-eligible for paratransit services in Baton Rouge since 1995.

7.	Plaintiff Jacqueline Broussard has disabilities that affect major life activities including caring for herself, seeing, hearing, verbalizing, and navigating unfamiliar areas. She is a "qualified individual with a disability" as those terms are used and defined in the ADA, 42 U.S.C. §§12102(2) and 12131(2), and 28 C.F.R. §35.104; and in §504, 29 U.S.C. §794.

8. Both Judy Populis and Jacqueline Broussard rely upon the CATS paratransit system to transport them to and from work.  Judy Populis additionally relies on paratransit services to transport her to and from appointments and meetings.  Due to historical difficulties with the system, Plaintiff Jacqueline Broussard no longer attempts to use paratransit to take her anywhere other than work, and relies on friends to assist her with other transportation needs.

9.	Defendant CATS is a public entity established pursuant to Louisiana law, La. Rev. Stat. §48:1451 *et seq.*, to operate a mass transportation system in East Baton Rouge Parish and in other participating parishes. CATS is sued only for prospective injunctive relief, attorneys' fees, and costs.

10.	CATS receives federal funding from the United States Department of Transportation.

11. CATS operates a fixed route transportation system along prescribed routes according to a fixed schedule, as those terms are used in 42 U.S.C. §12141(3). As a complement to fixed route service, CATS also operates a paratransit system in Baton Rouge, Louisiana through a contract service provider, Reliant Transportation.

## IV. FACTS

**A. The Americans with Disabilities Act and Implementing Regulations**

12. The Americans with Disabilities Act was enacted in 1990 in order to provide a clear national mandate to eliminate discrimination against individuals with disabilities and to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities. 42 U.S.C. §12101(b)(1) and (b)(2).

13. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. §12132.

14. Congress enacted the ADA in part to redress persistent discrimination against individuals with disabilities in the critical area of transportation; to eliminate the discriminatory effects of transportation barriers; and to assure equality of opportunity, full participation, independent living, and economic self-sufficiency to individuals with disabilities. 42 U.S.C. §12101(a)(3), (a)(5), and (a)(8).

15. Subtitle B to Title II of the ADA, 42 U.S.C. §§12141-65, addresses actions by public entities providing public transportation that constitute unlawful discrimination against individuals with disabilities.

16. Section 223 of the ADA, 42 U.S.C. §12143, requires all government agencies operating fixed route systems to provide complimentary paratransit service as a "safety net" for individuals with disabilities who are incapable of using conventional public transit. Such service must be "sufficient to provide to . . . individuals [with disabilities] a level of service . . . comparable

to the level of designated public transportation services provided to individuals without disabilities using such system." 42 U.S.C. §12143(a)(1).

17. Specifically, paratransit systems must have response times, 42 U.S.C. §12143(a)(2), and service areas, 42 U.S.C. §12143(c)(2), comparable to those of fixed route service.

18. Congress required the Secretary of Transportation to issue regulations to carry out Section 223 of the ADA, 42 U.S.C. §12143(b). The regulations promulgated by the Secretary of Transportation to implement the ADA's paratransit requirements set forth clear standards applicable to such services, 49 C.F.R. §37.131. Among these are the following requirements:

> (b) Response Time. The entity shall schedule and provide paratransit service to any ADA paratransit eligible person at any requested time on a particular day in response to a request for service made the previous day. . . .
>
> …
>
> (f) Capacity Constraints. The entity shall not limit the availability of complementary paratransit service to ADA paratransit eligible individuals by any of the following:
>
> > (1) Restrictions on the number of trips an individual will be provided;
> >
> > (2) Waiting lists for access to the service; or
> >
> > (3) Any operational pattern or practice that significantly limits the availability of service to ADA paratransit eligible persons.
> >
> > > (i) Such patterns or practices include, but are not limited to, the following:
> > >
> > > > (A) Substantial numbers of significantly untimely pickups for initial or return trips;
> > > >
> > > > (B) Substantial numbers of trip denials or missed trips;
> > > >
> > > > (C) Substantial numbers of trips with excessive trip lengths.

19. The regulations promulgated by the Secretary of Transportation to implement the ADA further provide at 49 C.F.R. §37.173 that a public or private entity operating a fixed route or demand responsive system must "ensure that personnel are trained to proficiency, as appropriate to their duties, so that they operate vehicles and equipment safely and properly assist and treat

individuals with disabilities who use the service in a respectful and courteous way, with appropriate attention to the difference among individuals with disabilities."

**B. §504 of the Rehabilitation Act and Implementing Regulations**

20.     The overall purpose of the Rehabilitation Act is to "maximize employment, economic self-sufficiency, independence, and inclusion and integration in society," of people with disabilities.  29 U.S.C. §701(b)(1).

21.     Section 504 of the Rehabilitation Act provides that "no otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by an Executive agency or by the United States Postal Service." 29 U.S.C. § 794(a).

22.     An "individual with a disability" is defined under the statute, in pertinent part, as "an individual who has a physical or mental impairment which substantially limits one or more of such person's major life activities." 29 U.S.C. §705(20)(B); (see also 44 C.F.R. §16.103, defining "individual with handicaps," the older term used in the regulations).

23.     Section 504 requires the head of every executive agency to promulgate regulations as shall be necessary to carry out the Act.  29 U.S.C. §794(a).

24.     The Secretary of Transportation has promulgated regulations to implement §504 at 49 C.F.R. §27.1 et seq.  These regulations require recipients of federal financial assistance through the Department of Transportation to comply with the Department's ADA regulations, 49 CFR part 37.  49 C.F.R. §27.19.

**C. CATS Failure to Comply with the ADA – Untimely Pickups**

25.     CATS has engaged and continues to engage in a systematic practice of providing substantial numbers of untimely pickups for initial and return trips.

5

26. Plaintiffs Judy Populis and Jacqueline Broussard and other persons with disabilities continue to be discriminated against by CATS due to its failure to provide paratransit services at requested times.

27. According to its Paratransit Rider Handbook, produced by CATS pursuant to a request under the Louisiana Public Records Act, La. Rev. Stat. §44:1 *et seq.*, CATS instructs its riders to be available up to ten (10) minutes prior to, and up to twenty (20) minutes after, a scheduled pick-up time.

28. Upon information and belief, for purposes of its record-keeping, CATS defines a pick-up as "late" if the driver arrives more than twenty (20) minutes after the scheduled pick-up time.

29. Records kept by CATS and produced pursuant to a request under the Louisiana Public Records Act, La. Rev. Stat. § 44:1 *et seq.*, show that in October 2006, 6.6% of paratransit rides provided by CATS were "late," according to CATS' definition of that term, to the pick-up; in November 2006, 8.26% of the rides were late; in December 2006, 7.73% of the rides were late; in January 2007, 14% of the rides were late; in February 2007, 16.21% of the rides were late; and in March 2007, 11.75% of the provided rides were late.

30. Upon information and belief, CATS does not specifically and separately track when its drivers arrive to a pick-up more than ten (10) minutes prior to a pick-up.

31. Upon information and belief, in October 2006, approximately 20.88% percent of its provided paratransit rides were more than 10 minutes early to the pick-up; in November 2006, approximately 26.23% of its provided rides were early; in December 2006, approximately 23.28% of its provided rides were early; in January 2007, approximately 13.04% of its provided rides were early; in February 2007, approximately 11.23% of its provided rides were early; and in March 2007, approximately 18.29% of its provided rides were early.

32. Trip records from CATS showing scheduled pick-up times, actual pick-up times, and destination arrival times suggest that, at least on some occasions when the paratransit van has arrived early, the paratransit rider leaves with the vehicle more than 10 minutes prior to the scheduled ride.

33. CATS' Paratransit Rider Handbook advises that paratransit drivers will wait approximately five (5) minutes from the time of its arrival within the allowable window (10 minutes prior to the scheduled pick-up time and 20 minutes after) for the rider. According to the policy, if the rider does not arrive within that time, the rider is considered a "no-show" for his or her ride and the driver will continue on the schedule.

34. Plaintiffs Judy Populis and Jacqueline Broussard have frequently experienced untimely pick-ups.

35. Judy Populis has been notifying CATS and Reliant personnel of her complaints regarding untimely pick-ups for several years. CATS performance has not improved.

36. Judy Populis and Jacqueline Broussard wait outside their homes for their paratransit rides. During their waits they are exposed to the elements – heat, cold, and rain. In addition, while they wait for their paratransit rides, Ms. Populis and Ms. Broussard are vulnerable to passersby who might take advantage of them. Late pick-ups mean that Judy Populis and Jacqueline Broussard are exposed to these hazards for longer than necessary.

37. As a result of late pick-ups, Ms. Populis and Ms. Broussard have been late to work through no fault of their own.

38. As a result of early pick-ups, Ms. Populis has had to leave work before the close of her workday.

39. After one such early pick-up, Ms. Populis complained to CATS and was informed that, despite the early arrival of the vehicle, she was not expected to appear before her scheduled time. On subsequent occasions when the paratransit van arrived early, however, Ms. Populis has been expected to leave work prior to the scheduled pick-up time.

**D.     CATS Failure to Comply with the ADA – Insufficient Capacity to Meet Demand**

40. On information and belief, CATS systematically fails to schedule and provide paratransit service to any ADA paratransit eligible person at any requested time on a particular day in response to a request for service made the previous day.

41. CATS instructs paratransit riders that they must schedule their rides at least 14 days in advance in order to be assured of a ride at the time requested on a particular day.

42. Plaintiffs and other similarly-situated individuals have been discouraged from attempting to request rides for next-day services, or other rides on short notice.

43. Despite the fact that many paratransit users are discouraged from making requests for next-day or other short-notice services, CATS issues substantial numbers of trip denials, due to a lack of paratransit and/or scheduling capacity, and not to causes beyond the control of CATS.

**E.    CATS Failure to Comply with the ADA – Improperly Trained Drivers**

44. CATS fails to ensure that the paratransit drivers employed by Reliant are trained to proficiency, so that they operate vehicles and equipment safely and properly assist and treat individuals with disabilities who use the service in a respectful and courteous way, with appropriate attention to the difference among individuals with disabilities.

45. Plaintiffs Jacqueline Broussard and Judy Populis have experienced numerous incidents regarding improper treatment by and interactions with paratransit drivers. Among other behaviors, the plaintiffs have experienced incidents in which drivers have approached them improperly; have tapped and tugged hard on them, rather than guiding them appropriately; have been unaware of the disabilities of the plaintiffs and unprepared to adjust communications accordingly; have been unaware of the appropriate destination address, and unprepared to communicate accordingly; and have driven in an unsafe and aggressive manner,

46. Plaintiff Jacqueline Broussard has reported numerous problems with drivers to Reliant, but her complaints have not been addressed. Ms. Broussard has offered to give a presentation regarding appropriate treatment of passengers who are deaf-blind at Reliant employee training sessions. Reliant did not respond to her offer, and the treatment by the drivers has not improved.

F.   **Class Action Allegations**

47.   Plaintiffs Judy Populis and Jacqueline Broussard bring this action on their own behalf and on behalf of all other persons similarly situated, pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure. The class consists of persons with disabilities who have been determined to be ADA-eligible for paratransit services by CATS.

48.   The exact size of the class is unknown to the Plaintiffs, but it is believed that several hundred individuals are currently certified as eligible for paratransit services by CATS.

49.   The questions of law or fact common to the class and any subclass are whether Defendant violates the ADA and §504, by its failure to provide paratransit services that comply with the requirements of Title II of the ADA and §504 in the following, but not limited to the following, respects:

   a) Engaging in a systematic practice of providing substantial numbers of untimely pickups for initial and return trips.

   b) Systematically failing to schedule and provide paratransit service to any ADA paratransit-eligible person at any requested time on a particular day in response to a request for service made the previous day; and

   c) Failing to insure that paratransit drivers are trained to proficiency, so that they operate vehicles and equipment safely and properly assist and treat individuals with disabilities who use the service in a respectful and courteous way, with appropriate attention to the difference among individuals with disabilities.

50.   The claims of the named Plaintiffs—that Defendants violated their rights under the ADA and §504 by failing to operate the paratransit systems so that the service provided is timely and reliable, that they are able to schedule rides up to 24 hours in advance, and that drivers are properly trained and supervised —are typical of the class members' claims.

51. The named Plaintiffs will fairly and adequately protect the interests of the class and any subclass. They have no interests which conflict with other class members. Plaintiffs' counsel are experienced in litigating class actions, including enforcement of the civil rights of people with disabilities.

52. Defendants have acted or refused to act on grounds generally applicable to the class and any subclass, thereby making appropriate injunctive and declaratory relief with respect to the class as a whole.

### FIRST CAUSE OF ACTION—VIOLATIONS OF §504 OF THE REHABILITATION ACT

53. Plaintiffs reallege and incorporate by reference paragraphs 1 through 40 above.

54. By its actions detailed above, Defendant is depriving Plaintiffs of rights guaranteed by §504 of the Rehabilitation Act, 29 U.S.C. §794, and 49 C.F.R. § 27.19, entitling Plaintiffs to declaratory and injunctive relief, attorneys' fees, and costs.

### SECOND CAUSE OF ACTION--VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

55. Plaintiffs reallege and incorporate by reference paragraphs 1 through 41 above.

56. By its actions detailed above, Defendant is depriving Plaintiffs of rights guaranteed by the Americans with Disabilities Act, 42 U.S.C. §12141 et seq., and its implementing regulations, 49 C.F.R. 37.131 et seq., entitling Plaintiffs to declaratory and injunctive relief, attorneys' fees, and costs.

THEREFORE, Plaintiff requests that this Court:

(1) Declare that Defendant's actions as alleged herein violate §504 and its implementing regulations, and the ADA and its implementing regulations;

(2) Permanently enjoin Defendant from violating Plaintiffs' rights under the federal Rehabilitation Act and its implementing regulations, and the Americans with Disabilities Act and its implementing regulations;

(3) Permanently enjoin Defendant to insure that it provides paratransit services to any ADA paratransit eligible person at any requested time on a particular day in response to a request for service made the previous day;

(4) Permanently enjoin Defendant from operating its paratransit system such that it provides substantial numbers of trips with untimely pickups, missed trips, or denied trips;

(5) Permanently enjoin Defendant from operating its paratransit system such that it engages in any other operational pattern or practice that limits the availability of complementary paratransit service to ADA paratransit eligible individuals;

(6) Permanently enjoin Defendant from failing to insure that its employees are trained to proficiency, so that they operate vehicles and equipment safely and properly assist and treat individuals with disabilities who use the service in a respectful and courteous way, with appropriate attention to the difference among individuals with disabilities.

(7) Order Defendant to pay to Plaintiff's attorneys' fees and costs; and

(8) Order any other relief that is appropriate.

Date:  September 17, 2007.

Respectfully submitted,

_____s/ Susan Meyers_____
Susan Meyers, T.A., La. Bar No. 29346
Advocacy Center
1010 Common Street, Suite 2600
New Orleans, Louisiana 70112
Telephone: 504-522-2337, ext. 138
Facsimile: 504-522-5507
smeyers@advocacyla.org

Nell Hahn, La. Bar No. 22406
Advocacy Center
600 Jefferson St., Suite 812
Lafayette, LA 70501
Telephone:  337-237-7380, ext. 11
Facsimile:  337-237-0486
nhahn@advocacyla.org

ATTORNEYS FOR PLAINTIFF